# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | Chapter 13 |
| FARAH NAZ ) | |
|     Debtor ) | No. 24-00584 |
| ) | |
| ) | Adversary Case No. |
| TANVEER JAFRI; SAMINA JAFRI; RAZIA ) | |
| SULTANA ) | |
|     Plaintiffs, ) | |
|     v. ) | Judge Timothy A. Barnes |
| ) | |
| FARAH NAZ, ) | |
|     Defendant ) | |

## **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

NOW COMES Tanveer Jafri, Samina Jafri, and Razia Sultana ("Plaintiffs") by Egan & Alaily, LLC, their attorneys, and complain of Defendant and Debtor Farah Naz and in doing so states the following:

### I. Preliminary Statements

1. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §157(b).

2. The Defendant is the debtor in the underlying Chapter 13 bankruptcy. The Plaintiff is a creditor of the Defendant.

3. The deadline for objections to discharge is April 15, 2024.

4. This is an adversary proceeding to determine the dischargeability of a debt, pursuant to 11 U.S.C. §523(a)(2)(A).

## II. Background

5. A dispute arose from a trust signed by Matlub Jafri ("Matlub") that named four of his children as equal beneficiaries of a trust, and a subsequent amendment to the trust. The trust asset at issue was real property commonly known as 4201 North Avers, Chicago, Illinois (the "Property).

6. Defendant Farah Naz' ("Farah") actions regarding the trust resulted in three affected siblings – Plaintiffs herein - Tanveer Jafri ("Tanveer"), Samina Jafri ("Samina"), Razia Sultana ("Razia") filing a lawsuit against Farah in Cook County, Illinois, case number 2018 CH 05303 (the "State Court Litigation").

7. The State Court Litigation resulted in a judgment against Farah (after trial) for, among other things, undue influence and breach of fiduciary duty (the "State Court Judgment").

8. Farah filed the instant bankruptcy 19 days after the State Cout Judgment was entered.

## III. Facts

9. Matlub was born in Pakistan in 1930. He married Samar Jahan and they had six children: Tanveer, Razia, Samina, Anjum, Farah, and Hina.

10. In 1988, Matlub, Samar, and their two youngest children moved to the United States, where Matlub worked as an accountant. Samar passed away in 1994.

11. In 1996, Matlub purchased and moved into the Property. He retired from accounting in 1998.

12. In his seventies, Matlub developed several serious health problems. In 2008, he had a heart attack and was hospitalized. In the hospital, he had a stroke. He suffered two more strokes in the ensuing years that left him with limited mobility in his left side. Matlub's chronic

health problems included ischemic heart disease, high blood pressure, congestive heart failure, and arthritis. He also had Parkinson's Disease; blindness in one eye, and near-deafness in one ear, and eventually dementia/Alzheimer's.

13. In June 2010, due to Matlub's health problems, Farah (and her husband Jitendra) moved Matlub into their house in Hanover Park. Farah helped Matlub with day-to-day activities including managing Matlub's finances, including but not limited to his monthly Social Security checks. For all intents and purposes, Farah was Matlub's caregiver. This continued for most times until Matlub's death in 2016.

14. On June 10, 2010, Matlub executed the Jafri Family Trust Agreement (the "Trust"). Matlub conveyed the Property into the Trust by quitclaim deed and named himself as the beneficiary. He identified his children Tanveer, Farah, Samina, and Razia as successor beneficiaries, each with a 25% interest.

15. Attorney James Engel prepared the Trust and the quitclaim deed. Farah knew Engel as a local attorney who previously represented Jitendra in another legal matter. To prepare the contents of the Trust, Engel took instructions from Farah and Jitendra because, in Engel's words, Matlub's English "wasn't such that he could discuss it" and "wasn't sufficient for a legal matter.

16. In 2011, Matlub traveled to Pakistan to stay with his daughter Razia. He stayed with her for several months during which time Matlub was often forgetful and confused. For instance, upon arrival, it took him several hours to recognize Razia. Despite his background as an accountant, he was unable to count money. When reminded of short-term events, Matlub would forget them. Razia also observed that Matlub had significant difficulty gripping objects,

3

including eating utensils. In addition, he could not hold a telephone nor initiate Skype when Farah called; Razia or others needed to help him.

17. Matlub returned from Pakistan in December 2011 and resumed living with Farah where Farah continued to isolate Matlub. Matlub continued to show confusion and disorientation in the ensuing years. In January 2014, Samina made an unannounced visit to Farah's home to check on Matlub. Matlub did not recognize her.

18. In February 2014, Matlub executed a document giving Farah his Power of Attorney (the "POA") for property. In April 2014, as her father's POA, Farah filed a case to evict her siblings Tanveer, Anjum, and Samina (a beneficiary of the Trust) from the Property. She obtained an eviction order on December 18, 2014.

19. In early May 2014, Farah contacted attorney Engel and asked him to prepare an amendment to the Trust (the "Trust Amendment"). She gave him instructions as to the content of the amendment. Engel prepared the Trust Amendment to the Trust in accordance with Farah's instructions. The Trust Amendment removed Tanveer, Razia and Samina as beneficiaries, leaving Farah as the sole beneficiary.

20. On May 10, 2014, Farah and Jitendra brought Matlub to Engel's office to sign the Trust Amendment. Engel read the Trust Amendment to Matlub in English. He also asked Farah and Jitendra to translate it for Matlub, which they did. Matlub signed the Trust Amendment on May 10, 2014, with Farah and Jitendra present.

21. On January 10, 2015, as part of a guardianship case, board-certified psychiatrist Mark Amdur, M.D. examined Matlub at Farah's home. The examination lasted 75 minutes. As set forth more fully in his report, Dr. Amdur concluded that Matlub was unable to make

4

decisions or function independently due to dementia, stroke and Parkinson's disease. In Dr. Amdur's opinion, Matlub was "totally incapable of making personal and financial decisions".

22. Dr. Amdur was unable to perform a standard cognitive test on Matlub due to very limited communication. But on other occasions, a standard cognitive test called the Mini-Mental State Examination ("MMSE") was given to Matlub. An MMSE score above 25 is the normal range. Anything below 25 indicates a lack of mental competency. Matlub's records show the following MMSE scores:

January 4, 2012 - 10

January 18, 2013 - 10

January 17, 2014 - 10

April 2, 2014 - 10

April 24, 2014 - 10

June 9, 2014 - 3

June 10, 2014 - 6

June 11, 2014 - 7

23. On January 28, 2015, in a guardianship matter initiated by Hina, Farah filed her own cross-petition for guardianship of Matlub. In April of 2015, the Court adjudicated Matlub a mentally disabled person and appointed Hina and Farah as co-guardians. By that time, Matlub had been transferred to a nursing home after suffering another stroke. He passed away in the nursing home on December 12, 2016 at age 86.

24. In 2017, Farah, as successor trustee, sold the Property for the purchase price of $338,000. The net credit to Farah was $306,944.37. Due to the Trust Amendment that removed

Tanveer, Razia and Samina each as 25% beneficiaries, the entire amount of $306,944.37 was disbursed to Farah.  Tanveer, Razia and Samina received nothing.

25. On April 24, 2018, Tanveer, Razia and Samina filed the State Court Litigation against Farah, alleging, among other things, that the Trust Amendment was void and should be rescinded due to Farah's fraudulent conduct.

26. The State Court Litigation went to trial.  On December 29, 2023, after bench trial, the court ruled in favor of the Plaintiffs.  (See Final Trial Order, attached as Exhibit A and incorporated by reference herein).  The court held that a) Matlub did not have mental capacity to execute the Trust Amendment (Ex. A, Page 10); b) Farah was Matlub's fiduciary and exerted undue influence over Matlub to get the Trust Amendment executed (Ex. A, Page 11); c) Farah breached her fiduciary duty by fraudulently profiting from the Trust Amendment (Ex. A, Page 13).

27. Farah filed the instant bankruptcy on January 17, 2024.

## COUNT I

### Exception to Discharge under 11 U.S.C. §523(a)(2)(A).

28. Plaintiffs re-state and incorporate Par. 1-27 as if fully set forth herein.

29. Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a discharge under Chapter 13 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud.

30. Farah committed fraud by advocating for the Trust Amendment and directing/ensuring its execution by Matlub, at a time when Matlub a) had no mental capacity to

understand the contents of the Trust Amendment and b) showed no desire to remove Tanveer, Razia and Samina from the Trust.

31. Farah intended to defraud and deceive Tanveer, Razia and Samina, by having them removed as 25% beneficiaries from the Trust without their knowledge or consent, such that Farah would be the sole (100%) beneficiary of the Trust.

32. Farah's fraudulent conduct created the debt owed to Tanveer, Razia and Samina, because the moment the Trust Amendment was executed, Tanveer, Razia and Samina would not be entitled to any future distribution under the Trust. Furthermore, had Farah not schemed to get the Trust Amendment executed, then when the Property was sold, the net proceeds of $306,944.37 would have been split equally 4 ways ($76,736.09 each), such that the Plaintiffs collectively would have received $230,208.27 and Farah would have received $76,736.09.

33. Due to Farah's creation of the Trust Amendment, however, Tanveer, Razia and Samina received nothing from the sale of the Property, while Farah received the entire $306,944.37. As a result, Farah's fraudulent conduct created the debt owed to Tanveer, Razia and Samina in the amount of $230,208.27.

34. Farah admits to this debt in Par. 4.20 of her Petition.

WHEREFORE, Plaintiffs Tanveer Jafri, Samina Jafri, and Razia Sultana request that this Court enter a judgment that the debt of $230,208.27 be found to be a non-dischargeable debt; enter a judgment in favor of Plaintiffs and against Defendant in the amount of $230,208.27, and for any other relief this Court deems just and equitable.

## COUNT II

### Exception to Discharge under 11 U.S.C. §523(a)(4).

35. Plaintiffs re-state and incorporate Par. 1-27 as if fully set forth herein.

36. Pursuant to Section 523(a)(4) of the Bankruptcy Code, a discharge under Chapter 13 does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

37. Debtor cared for, maintained, operated, and had sole control of Matlub's finances at the time of (and before and after) the Trust Amendment.

38. Matlub granted Debtor a Power of Attorney for property in February 2014.

39. The debt to Plaintiffs was created by defalcation because Farah advocated for the Trust Amendment and directed/ensured its execution by Matlub, at a time when Matlub a) had no mental capacity to understand the contents of the Trust Amendment and b) showed no desire to remove Tanveer, Razia and Samina from the Trust.

40. Furthermore, the debt to Plaintiffs was created by fraud because Farah intended to deceive Tanveer, Razia and Samina, by having them removed as 25% beneficiaries from the Trust without their knowledge or consent, such that Farah would be the sole (100%) beneficiary of the Trust.

WHEREFORE, Plaintiffs Tanveer Jafri, Samina Jafri, and Razia Sultana request that this Court enter a judgment that the debt of $230,208.27 be found to be a non-dischargeable debt; enter a judgment in favor of Plaintiffs and against Defendant in the amount of $230,208.27, and for any other relief this Court deems just and equitable.

        Respectfully submitted,

        Tanveer Jafri, Samina Jafri, and Razia Sultana

        By: /s/ Adham Alaily
            One of their attorneys

Adham Alaily
aalaily@ea-atty.com

Egan & Alaily, LLC
20 S. Clark Street, Suite 2120
Chicago, Illinois 60603
(312) 253-8640